UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK CARILLO BONILLA,<br><br>       Petitioner,<br><br>   v.<br><br>MIKE KNOWLES, et al.,<br><br>       Respondents. | 1:02-cv-6307-OWW-TAG HC<br><br>REPORT AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS<br><br>(Doc. 1) |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is in custody of the California Department of Corrections serving an indeterminate sentence of 25 years-to-life pursuant to a judgment of the Superior Court of California, County of Merced (the "Superior Court"). On November 10, 1999, Petitioner was convicted by court trial of petty theft with a theft-related prior conviction. (Cal. Pen. Code § 666 and 488). The court also found that Petitioner had suffered two prior "serious" or "violent" felonies that qualified as strikes under California's "Three Strikes" law (Cal. Pen. Code §§ 667(d) & (e)). On November 10, 1999, Petitioner was sentenced to an indeterminate term of 25 years-to-life with the possibility of parole plus a determinate sentence of four years based upon his four prior prison terms, pursuant to California Penal Code § 667.5, subdivision (b). (Clerk's Transcript on Appeal ("CT"), 168).

On December 10, 1999, Petitioner filed a direct appeal in the California Court of Appeals, Fifth Appellate District (the "5th DCA"), raising the following issues regarding the Three Strikes

law:

    1. A conviction for petty theft with a prior conviction should not trigger the Three Strikes law;

    2. The classification of Petitioner's prior assault with a deadly weapon conviction as a strike denied him equal protection of the law;

    3. The Three Strikes law is cruel and unusual punishment; and

    4. The trial court abused its discretion by failing to strike one or more of Petitioner's prior convictions in the furtherance of justice.

(Doc. 18, Exh. A).

On July 30, 2001, the 5th DCA, in an unpublished decision, affirmed Petitioner's conviction and sentence. (Doc. 18, Exh. A). On September 10, 2001, Petitioner filed a petition for review in the California Supreme Court, raising the same grounds as he had raised in the 5th DCA. (Doc. 18, Exh. B). On October 17, 2001, the California Supreme Court denied Petitioner's petition for review. (Doc. 18, Exh. C).

On September 5, 2002, Petitioner filed a state habeas petition with the Merced County Superior Court, claiming that his conviction was unconstitutional under several decisions of the United States Court of Appeals, Ninth Circuit. (Doc. 18, Exh. D). The Superior Court denied the habeas petition on September 6, 2002. (Doc. 18, Exh. E).

On October 11, 2002, Petitioner filed a state habeas petition in the California Supreme Court (Doc. 18, Exh. F), which was denied on March 19, 2003. On October 15, 2002, Petitioner filed the instant petition, rearguing the same four grounds he had raised previously in state court. (Doc. 1). Respondent's answer was filed on June 9, 2003. (Doc. 18).  Although Petitioner sought and was granted additional time in which to file a traverse, it does not appear that a traverse was ever filed with the Court.

Respondent concedes that Petitioner's four grounds for relief in this petition have been fully exhausted. (Doc. 18, p. 3).

///

///

**FACTUAL BACKGROUND**

On May 27, 1999, Paul Garcia, a loss prevention agent for Gottschalk's department store, and Paul Jankowski, loss prevention manager, were viewing the security cameras in the back of the store when they observed Petitioner arrive at the store and put his bicycle up against the front wall of the store. (RT 10; 56). This was suspicious because, in the past, people had come into the store to steal items and had left bicycles near the front door to escape quickly. (RT 10). Petitioner immediately went to the back of the store. (Id.). Jankowski went outside the store, believing that the bicycle's location would make it possible for Petitioner to get away quickly should he do anything criminal in the store; however, he remained in radio contact with Garcia. (RT 11).

Garcia then began to follow Petitioner via the security camera. (RT 57). From the back of the store, Petitioner moved toward the front, where "high theft items" such as fragrances and costume jewelry were located. (RT 57). Garcia saw Petitioner stop to look at a table containing boxes of watches. (Id.). Petitioner selected one of the boxes, closed it, looked from side to side, knelt down beneath the table, and shoved the item down the front of his pants. (RT 57-58). Garcia was able to observe Petitioner's behavior because he used a "zoom in" feature on the camera to see what Petitioner was doing. (RT 58). Garcia then informed Jankowski that Petitioner had concealed the item. (Id.). Before Petitioner left the store, Garcia went out to assist Jankowski, who was alone outside the store. (RT 59).

Together, Garcia and Jankowski placed Petitioner into custody. (Id.). Jankowski then removed the merchandise from Petitioner's pants. (Id.). The item taken was a blue Embassy watch box and watch, priced at $24.99. (RT 14). The two men took Petitioner to the security office where they interviewed him. (RT 60). Petitioner admitted to Jankowski that he had entered the store planning to steal the watch. (RT 16). Petitioner also indicated that he had taken the watch "for drugs." (RT 17).

Joseph Weiss, a Merced Police Department officer, came to the department store to apprehend Petitioner. (RT 33). After reading Petitioner his constitutional rights, Petitioner agreed to speak with Weiss. (Id.). Petitioner admitted stealing the watch and explained to Weiss that he was a heroin addict and needed the watch to sell or trade to get some heroin. (RT 33). Weiss, who had

drug training, indicated he believed Petitioner to be under the influence of heroin at the time Weiss contacted him. (RT 35).

**DISCUSSION**

**I. Jurisdiction.**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7, 120 S.Ct. 1495 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Merced County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d). Accordingly, the Court has jurisdiction over this action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 117 S.Ct. 2059 (1997), cert. denied, 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), cert. denied, 520 U.S. 1107 (1997), overruled on other grounds by, Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed on October 15, 2002, after the enactment of the AEDPA, and thus is governed by the AEDPA.

**II. Legal Standard of Review.**

A petition for writ of habeas corpus under 28 U.S.C. 2254(d) will not be granted unless the adjudication of a prisoner's claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71, 123 S.Ct. 1166 (2003); Williams v. Taylor, 529 U.S. at 412-413.

The first prong of federal habeas review involves the "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1). This prong pertains to questions of law and mixed

questions of law and fact. Williams v. Taylor, 529 U.S. at 407-410; Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2004).  A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S 133, 141, 125 S.Ct. 1432 (2005), citing Williams v. Taylor, 529 U.S. at 405.  A state court decision involves an "unreasonable application" of clearly established federal law "if the state court applies [the Supreme Court's precedents] to the facts in an objectively unreasonable manner." Brown v. Payton, 544 U.S. at 141.  Consequently, a federal court may not grant habeas relief simply because the state court's decision is incorrect or erroneous; the state court's decision must also be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 511, 123 S.Ct. 2527 (2003),  citing Williams v. Taylor, 529 U.S. at 409.  Section 2254(d)(1)'s reference to "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412; Lockyer v. Andrade, 538 U.S. at 412; Barker v. Fleming, 423 F. 3d 1085, 1093 (9th Cir. 2005).

The second prong of federal habeas review involves the "unreasonable determination" clause of 28 U.S.C. § 2254(d)(2).  This prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029 (2003).  Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment").  A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id. ; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038, 125 S.Ct. 809 (2004).  The AEDPA also requires that considerable deference be given to a state court's factual findings. A state court's factual findings are  presumed to be correct, and such presumption of correctness may be

rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court decided the petitioner's claims on the merits but provided no reasoning for its decision, the federal habeas court must independently review the record to determine whether habeas corpus relief is available under § 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 981-982 (9th Cir. 2002). Where the state court denied the petitioner's claims on procedural grounds or did not decide such claims on the merits, the deferential standard of the AEDPA do not apply and the federal court must review the petitioner's 's claims de novo. Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

**III. Review of Petitioner's Claims.**

The instant petition alleges the following as grounds for relief:

**Ground One** — **Imposition of a Three Strikes sentence violates Equal Protection guarantees because it imposes a much harsher sentence for an individual convicted of petty theft with a prior than for one convicted of simple petty theft.**

**Ground Two** — **Petitioner's sentence of 25 years to life for petty theft violates the prohibition against cruel and unusual punishment under the Eighth Amendment to the United States Constitution.**

**Ground Three** — **Petty theft with a prior should not be considered a felony that triggers the Three Strikes law because it is essentially a misdemeanor which is punished as a felony because of recidivism.**

**Ground Four** — **The trial court abused its discretion by refusing to dismiss any of Petitioner's prior strikes, thus resulting in a disproportionate sentence.**

**Ground One** — **Imposition of a Three Strikes sentence violates Equal Protection guarantees because it imposes a much harsher sentence for an individual convicted of petty theft with a prior than for one convicted of simple petty theft.**

Petitioner asserts that his conviction and sentence violate the Equal Protection Clause because a similarly situated defendant, i..e., one convicted of petty theft and having two or more

prior "strike" convictions, but who did not have a prior theft-related conviction that would elevate the misdemeanor petty theft to felony petty theft with a prior, does not trigger the Three Strikes sentencing scheme and is thus subject to a much less harsh sentence for essentially the same conduct. This contention is without merit.

**A. California Penal Code § 666.**

Under California law, petty theft is theft of property valued at or less than $400. (Cal. Pen. Code § 488). Petty theft ordinarily is a misdemeanor, punishable by fine or imprisonment in the county jail not exceeding six months, or both. (Cal. Pen. Code § 490). However, petty theft becomes a felony-misdemeanor or "wobbler" [1] if the defendant has been previously convicted of petty theft, grand theft, auto theft, burglary, carjacking, robbery or a felony receiving stolen property, and either served a term in a penal institution, or was imprisoned as a condition of probation. (Cal. Pen. Code § 666). Petty theft with a prior conviction becomes a felony if the defendant is sentenced to prison, and once the crime becomes a felony, the defendant is subject to sentencing under the Three Strikes law. See People v. Terry, 47 Cal. App. 4th 329, 331, 332 (1996); see also People v. Stevens, 48 Cal. App. 4th 982, 987 (1996).

**B. Evidence Regarding Petitioner's Criminal History.**

In Count I of the First Amended Information filed August 26, 1999, Petitioner was charged with petty theft with a prior conviction, i.e., a 1989 conviction for petty theft with a prior, for which Petitioner served a term of incarceration. (CT 45). The amended information also alleged that Petitioner had suffered two prior violent or serious felony convictions–a 1979 conviction for voluntary manslaughter and a1983 conviction for forcible rape–within the meaning of California's Three Strikes law ( Cal. Pen. Code § 667 (d)), and four prior prison terms within the meaning of Penal Code § 667.5(b). (CT 46).

At the court trial, the prosecution introduced Petitioner's 969b packet, i.e., the certified documents from the California Department of Corrections and Rehabilitation regarding Petitioner's criminal history. (CT 121, 136; RT 44-49). Those documents established that Petitioner had been

---

[1] A "wobbler" is an offense that can be punished as either a misdemeanor or a felony. See Ferreira v. Ashcroft, 382 F.3d 1045, 1051 (9th Cir. 2004)

convicted in 1994 of possession of heroin (Cal. Health & Saf. Code § 11350), for which he received a sentence of six years. (CT 127). Prior to that, in 1989, he was convicted of petty theft with a prior conviction, and sentenced to a term of five years. (CT 128). In 1983, Petitioner was convicted of forcible rape (Pen. Code § 261.2), for which he received an eight-year sentence. (CT 129). In 1979, Petitioner was convicted of voluntary manslaughter and sentenced to serve six years. (CT 130). The 969b packet also reflected a 1975 conviction for receiving stolen property (Pen. Code § 469.1). (CT 141).

The trial court found Petitioner guilty of petty theft with a prior theft-related conviction, and found that the two prior "strike" allegations and the four prior prison terms were true. (CT 145; RT 73). Prior to trial and again at sentencing, Petitioner moved for an order striking one or more of his prior "strike" convictions. (CT 51; 162). The Superior Court denied the motion and imposed a third-strike sentence of 25 years-to-life plus four years. (CT 118; 163-164).

**C. Equal Protection.**

For statutory challenges made on constitutional equal protection grounds, the general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate government interest. See City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 440, 105 S.Ct. 3249 (1985); Von Robinson v. Marshall, 66 F.3d 249, 251 (9th Cir.1995); United States v. Harding, 971 F.2d 410, 412 (9th Cir.1992). A statutory sentencing scheme that does not disadvantage a suspect class or infringe upon the exercise of a fundamental right, as is the case here, is subject only to rational basis scrutiny. See Harding, 971 F.2d at 412. It can be disturbed only if the petitioner can prove "that there exist no legitimate grounds to support the classification." Id. at 413 (citing Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 464, 101 S.Ct. 715, 724 (1981)).

Here, Petitioner cannot establish that the classification to which he belongs is not based on legitimate grounds. The California Court of Appeal, relying on prior state court decisions, and applying the appropriate federal equal protection analysis, correctly rejected Petitioner's contention. The 5th DCA, citing People v. Nguyen, 54 Cal.App.4th 705 (1997), expressly agreed with the reasons set forth in Nguyen for rejecting Petitioner's argument. (Doc. 18, Exh. A, p. 3). In Nguyen,

as here, the defendant was convicted of petty theft with a prior and also had two qualifying prior strike convictions, he was sentenced to 25 years-to-life, and he raised the identical equal protection argument that Petitioner now raises. 54 Cal.App.4th at 711. Rejecting that argument, the California Court of Appeal explained the State's "rational basis" for treating individuals, such as Nguyen and Petitioner, more harshly than other defendants with two prior "strike" convictions:

> Individuals who commit petty theft and have a history of committing theft-related offenses are significantly distinct from those individuals who have no such history. As to each subgroup, there is a compelling justification for treating the individual members of the subgroup more harshly than individuals who have never before committed a theft-related offense. The justification for treating members of the first subgroup more harshly than individuals who have committed two prior serious felony offenses but have never before committed a theft-related offense is apparent. An individual who is a member of this subgroup has suffered three prior convictions including two serious felony convictions and a prior theft-related conviction which was serious enough to result in service of a period of confinement. In contrast, an individual who is a member of the group to which we must compare these thrice convicted subgroup members has only suffered two prior convictions and has never before been convicted of a theft-related offense. The commission of theft by a thrice convicted individual with not only a history of serious felony misconduct but also of committing theft and being confined therefor poses a much more serious danger to the community than the commission of theft by a twice convicted individual with a history of serious felony misconduct who has never before committed theft. As he or she has suffered more prior convictions, the thrice convicted individual has had more opportunities to reform his or her conduct. Notwithstanding these additional opportunities to conform his or her conduct to society's rules, the thrice convicted individual has chosen a life of crime. The previous confinement of this individual for his or her prior theft-related offense also failed to prevent this individual from again committing a theft-related offense. As the thrice convicted individual has shown himself or herself to be resistant to confinement and committed to a life of crime, this individual poses a substantially greater danger to the community than the twice convicted individual who has never before committed a theft-related offense. The state has a compelling interest in eliminating this danger to society which necessitates harsher punishment for such individuals

Nguyen, 54 Cal.App.4th at 718.

From the foregoing, the Court concludes that California has a rational basis upon which to distinguish between the class of defendants, such as Petitioner, who have one or more prior theft-related convictions that elevate a petty theft conviction to a felony, and those who do not. Thus, the state court decision was not contrary to nor an unreasonable application of clearly established federal law. Petitioner is therefore not entitled to federal habeas relief on this claim.

///

///

**Ground Two.    Petitioner's sentence of 25 years to life for petty theft violates the prohibition against cruel and unusual punishment under the Eighth Amendment to the United States Constitution.**

Petitioner contends that his sentence of 25- years-to-life plus four years violates the federal prohibition against cruel and unusual punishment contained in the Eighth Amendment to the United States Constitution. (Doc. 1, p. 5). This contention is also without merit.

In two companion cases, Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166 (2003) and Ewing v. California, 538 U.S. 11, 123 S.Ct. 1179 (2003), the Supreme Court provided guidance in applying Eighth Amendment jurisprudence to California's Three Strikes law in habeas cases. In Ewing, the Supreme Court explained that while the constitutional principle of proportionality between crime and sentence applies to noncapital sentences, "[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." Ewing, 538 U.S. at 23 (citations omitted). The gross disproportionality principle applies "only in the 'exceedingly rare' and 'extreme' case." Andrade, 538 U.S. at 73 (citations omitted).

Applying these standards, in Ewing, the Supreme Court rejected the defendant's claim that a sentence of 25 years-to-life for stealing nearly $1,200 worth of golf clubs was "grossly disproportionate" to his crime where the defendant had previously been convicted of three residential burglaries and a robbery. Ewing, 538 U.S. at 18. Similarly, in Andrade the Court reversed the Ninth Circuit's grant of habeas relief to a defendant sentenced to two consecutive 25 years-to-life sentences for two petty theft convictions for stealing five videotapes worth less than $85, and four video tapes worth less than $70, respectively.

In Andrade, the Supreme Court concluded that the state court decision upholding the sentence was not "contrary to" the governing legal principles set forth in Supreme Court cases. Andrade, 538 U.S. at 73-74. The Supreme Court also held that the state appellate court did not "unreasonably appl[y]" the gross disproportionality principle to Andrade's case since that principle "gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle–the 'precise contours' of which 'are unclear.'" Id., 538 U.S. at 75-77. According to the Supreme Court, "it was not objectively unreasonable for the California Court of

Appeal to conclude that these 'contours' permitted an affirmance of Andrade's sentence." Id.  In addition to Andrade and Ewing, the Supreme Court has also upheld a life sentence under Texas's habitual offender statute for obtaining $120 by false pretenses, Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133 (1980), and a life sentence *without the possibility of parole* for possession of cocaine. Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680 (1991).

In 2004, the Ninth Circuit held that a Three Strikes sentence of 25 years-to-life for a third offense of shoplifting a $199 VCR was cruel and unusual punishment. Ramirez v. Castro, 365 F.3d 755 (9th Cir. 2004).  The Ramirez petitioner's criminal history consisted of two convictions for second-degree robbery as a result of a single guilty plea entered before the Three Strikes law was enacted.  In that case, the prosecution used two 1991 shoplifting convictions to charge the petitioner in 1995 with one count of petty theft with a prior theft-related conviction. (Cal. Pen. Code § 666). The jury found the two 1991 shoplifting convictions were strikes, the trial court refused to strike either of them, and sentenced the petitioner to 25 years-to-life. Ramirez v. Castro, 365 F.3d at 756. Prior to his third-strike sentence, the petitioner had never been sentenced to prison, and had been incarcerated only one time in the county jail. In finding the sentence unconstitutional, the Ninth Circuit determined that the state court unreasonably applied the gross proportionality principle to the "unique facts of Ramirez's case." Id. at 774.

By contrast, in another 2004 case, the Ninth Circuit held that a Three Strikes sentence of 25 years-to-life for a third "wobbler" offense did not constitute cruel and unusual punishment, because the petitioner had a lengthy criminal history, had been incarcerated several times, and the strikes used to enhance the petitioner's sentence involved the threat of violence. Rios v. Garcia, 390 F.3d 1082, 1086 (9th Cir. 2004).

In light of this jurisprudence, the Court finds that Petitioner's sentence here is not grossly disproportionate to the offense and therefore the Court must conclude that the sentence imposed in this case and affirmed by the state courts, though harsh, did not offend the Eighth Amendment. Petitioner's crime is the same as the crime in Andrade, which upheld two consecutive 25-years-to-life sentences for stealing videotapes valued at less than $200, after convictions on two counts of petty theft.  Here, Petitioner received a 25- years-to-life sentence plus four years for stealing a watch

valued at $25, after a conviction on one count of petty theft. As in Andrade, Petitioner was no first-time offender, and his sentence does not preclude parole.[2]

Beyond the instant offense, however, the Court must consider Petitioner's prior history, which is more extensive than in Ramirez, as well as his lengthy incarceration in state prison over most of his adult life. As the Supreme Court stated in Ewing, "[i]n weighing the gravity of Ewing's offense, we must place on the scales not only his current felony, but also his long history of felony recidivism." Ewing, 538 U.S. at 29.

Based on the record now before this Court, Petitioner's criminal history shows that prior to the instant offense, Petitioner had been convicted of five felonies, i.e., possession of heroin, petty theft with a prior conviction, forcible rape, voluntary manslaughter, and receiving stolen property. (CT 127-130; 141). The probation report submitted at sentencing indicates that Petitioner also had a 1993 conviction for being under the influence of a controlled substance, resisting arrest, and battery on a peace officer, a 1970 conviction for possession of restricted dangerous drugs, a 1971 conviction for smuggling drugs into the Merced County Jail, and several convictions for driving under the influence. (CT 148; 150; 151).

Prior to incurring this lengthy adult record, Petitioner had an extensive record as a juvenile offender that started in 1962. (CT 147). Indeed, at his 1983 sentencing for forcible rape, the trial judge gave the following summary of Petitioner's criminal history:

> Well, Bonilla's been before the Court. He started in court when I started in court as a judge. He started in '62. I started in '63 and he's been before the Court often during the course of the past 20 years. He started out with trespassing, but in 1963 in San Joaquin County for burglary, he was committed to the California Youth Authority. Five years later in Merced there were five counts of extortion and he was committed to the Youth Authority for Merced County. 1969 another commitment to the California Youth Authority, under the influence of intoxicating drugs...
>
> 1970 a burglary, back to the Youth Authority, and he went to Mt. Bullion. Then later in 1970, possession of restricted dangerous drugs, and remanded to court. 1971, furnishing restricted dangerous drugs and possession of illegal narcotics in a detention facility. Again, returned to CYA. '72, burglary, recommitted to CYA. '74 burglary and receiving stolen property and he was committed to the Department of Corrections.

---

[2] California Penal Code § 3041 provides that parole must be granted unless certain criteria, not present in this case, are met. § 3041 further provides that the California Board of Prison Terms must grant parole unless it determines that public safety requires a lengthier period of incarceration for the individual because of the gravity of the offense underlying the conviction. In re Rosenkrantz, 29 Cal. 4th 616, 654 (2002).

> 1979, he was charged in Los Banos with murder and assault by means of force likely to produce great bodily harm and he entered a plea to voluntary manslaughter and went to prison for six years. He was paroled in April of this year....

(CT 109-110).

Given Petitioner's extensive criminal history, spanning almost forty years and including no less than five felony convictions including voluntary manslaughter and rape, his case is not "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross proportionality." Harmelin, 501 U.S. at 1005. Indeed, Petitioner's prior criminal history is unlike that of Ramirez, and does not warrant habeas relief. As was true in Ewing, and reiterated in Nguyen, Petitioner's sentence of 25 years-to-life plus four years is justified by the State's public-safety interest in incapacitating and deterring recidivist felons, and is amply supported by Petitioner's numerous convictions documenting his disregard for the law. Ewing, 538 U.S. at 29-30.

In sum, Petitioner's sentence, when compared with his underlying offenses, does not violate the Eighth Amendment's prohibition on cruel and unusual punishment. Based on the foregoing, the Court concludes that the state court's rejection of Petitioner's claim was neither contrary to nor an unreasonable application of clearly established United States Supreme Court precedent. Accordingly, this claim must be denied.

**Ground Three     Petty theft with a prior should not be considered a felony that triggers the Three Strikes law because it is essentially a misdemeanor which is punished as a felony because of recidivism.**

Petitioner contends that petty theft with a prior is a "substantive" misdemeanor and should not trigger a Three Strikes sentence. (Doc. 1, p. 6). This is not a basis for habeas relief and, even if it were, it must be rejected on its merits.

Issues of state law sentencing errors generally are not cognizable on federal habeas review unless the petitioner claims a deprivation of due process or equal protection due to the misapplication of the sentencing law. Estelle v. McGuire, 502 U.S. 62, 67, 112 S.Ct. 475 (1991) (holding that "it is not the province of a federal habeas court to reexamine state court determinations on state law questions"); Featherstone v. Estelle, 948 F.2d 1497, 1500 (9th Cir. 1991); Miller v.

Vasquez, 868 F. 2d 1116, 1118-19 (9th Cir. 1989) (refusing to address sentence enhancement claim); see Fetterly v. Paskett, 997 F.2d 1295, 1300 (9th Cir. 1993).

A criminal defendant is entitled to due process at sentencing. Gardner v. Florida, 430 U.S. 349, 358, 97 S.Ct. 1197 (1977). However, federal courts must defer to a state court's interpretation of state sentencing laws. Bueno v. Hallahan, 988 F. 2d 86, 88 (9th Cir. 1993). "Absent a showing of fundamental unfairness," a state court's misapplication of its own sentencing laws does not justify federal habeas relief." Christian v. Rhode, 41 F. 3d 461, 469 (9th Cir. 1994). As a threshold matter, the Court must determine whether Petitioner has alleged that his sentence is fundamentally unfair.

A showing of fundamental unfairness has been found under two circumstances. First, where a state court imposed a sentence in excess of state law. Walker v. Endell, 850 F. 2d 470, 476 (9th Cir. 1987); see also, Marzano v. Kincheloe, 915 F.2d 549, 552 (9th Cir. 1990) (guilty plea does not permit state court to impose a sentence in excess of state law despite agreement of defendant to sentence). Second, where a state court enhanced a sentence based on materially false or unreliable information or based on a conviction infected by constitutional error. See United States v. Hanna, 49 F.3d 572, 577 (9th Cir. 1995); Walker, 850 F. 2d at 477. Generally, a federal habeas court will not review a state sentence that is within statutory limits. Walker, 850 at at 476.

Here, Petitioner does not allege that his prior "strike" convictions or his prior prison term enhancements were based on either materially false information or upon convictions infected by constitutional error. Nor has Petitioner asserted that the trial judge imposed a sentence in excess of state law. Rather, Petitioner has contended that the length of the sentence is so disproportionate to the nature of the offense, i.e., petty theft, that it violates constitutional safeguards against cruel and unusual punishment.

The Court has already addressed the latter argument in the previous section, and need not repeat that analysis here. Thus, unable to perceive any constitutional issue in Ground Three distinct from the issues raised in the two previous grounds, the Court does not find any cognizable federal question in this Ground Three upon which to grant habeas relief.

However, assuming, arguendo, that Petitioner states a federal claim, Petitioner is simply incorrect that petty theft with a prior is a "substantive" misdemeanor that should fall outside the

Three Strikes sentencing scheme. In <u>Ewing</u>, 538 U.S. 11, the United States Supreme Court, discussing California's Three Strikes sentencing scheme, noted as follows:

> Throughout the States, legislatures enacting three strikes laws made a deliberate policy choice that individuals who have repeatedly engaged in serious or violent criminal behavior, and whose conduct has not been deterred by more conventional approaches to punishment, must be isolated from society in order to protect the public safety. *Though three strikes laws may be relatively new, our tradition of deferring to state legislatures in making and implementing such important policy decisions is longstanding*.
>
> Our traditional deference to legislative policy choices finds a corollary in the principle that the Constitution "does not mandate adoption of any one penological theory." [citation omitted]...
>
> When the California Legislature enacted the three strikes law, it made a judgment that protecting the public safety requires incapacitating criminals who have already been convicted of at least one serious or violent crime. Nothing in the Eighth Amendment prohibits California from making that choice. To the contrary, our cases establish that "States have a valid interest in deterring and segregating habitual criminals." [citation omitted].

<u>Ewing</u>, 538 U.S. at 24-25 (emphasis supplied).

Turning to whether California's "wobbler" offenses should be treated differently for constitutional purposes, the Supreme Court rejected that notion and deemed the fact that an offense was a wobbler to be "of no moment":

> "'The purpose of the trial judge's sentencing discretion' to downgrade certain felonies is to 'impose a misdemeanor sentence in those cases in which the rehabilitation of the convicted defendant either does not require, or would be adversely affected by, incarceration in a state prison as a felon.' [citation omitted]. *Under California law, the reduction is not based on the notion that a 'wobbler' is 'conceptually a misdemeanor.'* Rather, it is 'intended to extend misdemeanant treatment to a potential felon.'"

<u>Ewing</u>, 538 U.S. at 29 [citations omitted](emphasis supplied).

In so ruling, the <u>Ewing</u> court cited <u>Necochea v. Superior Court</u>, 23 Cal.App.3d 1012 (1972), in which the California Court of Appeal explained the concept of the wobbler as follows:

> "The purpose of section 17(b)(4) [defining the "wobbler" offense] is plainly to benefit the offender and to encourage misdemeanor filings where such appear to be warranted...
>
> Pragmatically, the election to charge an alternatively punishable offense as a misdemeanor *is not made on the abstract (and erroneous) grounds that the offense is conceptually a misdemeanor* but it is rather intended to extend misdemeanant treatment to a potential felon. In other words, the purpose of 17(b)(4) is not to vest the prosecutor with the judicial prerogative of decreeing in the form of a judgment

>the misdemeanor-felony nature of the crime, but rather to vest the district attorney with the right to extend more lenient treatment to an offender."

Id. at 1016 (emphasis supplied).

From the foregoing, even if Ground Three stated a federal claim, federal deference to state sentencing schemes precludes this Court from concluding either that California cannot vest its trial courts with the discretion to deem petty theft with a prior conviction to be a wobbler or that the trial court's decision not to reduce Petitioner's conviction to a misdemeanor were determinations contrary to or a unreasonable applications of clearly established federal law.

**Ground Four          The trial court abused its discretion by refusing to dismiss any of Petitioner's prior strikes, thus resulting in a disproportionate sentence.**

**A.  Failure to Present a Federal Question.**

As stated previously, the basic scope of habeas corpus is prescribed by statute. Subsection (c) of Section 2241 of Title 28 of the United States Code provides that habeas corpus shall not extend to a prisoner unless he is "in custody in violation of the Constitution." 28 U.S.C. § 2254(a) states:

>The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to a judgment of a State court *only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States*.

(emphasis added). See also Rule 1 to the Rules Governing Section 2254 Cases in the United States District Court. "[F]ederal habeas corpus relief does not lie for errors of state law." Estelle, 502 U.S. at 67, quoting, Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102 (1990). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle, 502 U.S. at 67-68. "A state court's procedural or evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process." Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir.1995); see Pulley v. Harris, 465 U.S. 37, 41, 104 S.Ct. 871 (1984); Jammal v. Van de Kamp, 926 F.2d 918, 919-920 (9th Cir.1991); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir.1985). Therefore, "a federal court cannot disturb on due process grounds a state court's decision to admit evidence unless the admission

U.S. District Court
E. D. California

16

of the evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair." Walters, 45 F.3d at 1357.

Respondent correctly argues that the instant claim fails to present a federal question. Petitioner does not assert a violation of the Constitution or federal law. Petitioner fails to cite any federal authority for his arguments. Thus, it appears that Petitioner's entire claim is premised on a violation of state law. Consequently, Petitioner's claim is not cognizable on federal habeas review and must be denied. Nevertheless, the Court will also address the claim as it is without merit.

**B. Review of Claim.**

Here, Petitioner has failed to demonstrate that the trial judge's decision not to dismiss either of the prior "strike" convictions was arbitrary or irrational. From the record before this Court, it is clear that the trial judge was aware of the severity of the sentence, but that he also realized that he could not merely strike the prior convictions simply because he did not agree with the length of the sentence. See People v. Superior Court (Romero), 13 Cal.4th 497, 531 (1996), quoting People v. Dent, 38 Cal.App.4th 1726, 1731 (1995) (a court fails to act "properly if 'guided solely by a personal antipathy for the effect that the three strikes law would have on [a] defendant, . . . .'").

In People v. Williams, 17 Cal.4th 148 (1998), the California Supreme Court clarified its Three Strikes jurisprudence by explaining the factors a trial court should consider in exercising its discretion under Romero:

> "In ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law...the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies."

Williams, 17 Cal.4th at 161.

In the instant case, given Petitioner's extensive criminal record and his apparent inability to conform his behavior to societal norms, the trial court correctly rejected any contention that Petitioner was somehow "outside the scheme's spirit."  To the contrary, it is apparent to this Court that Petitioner is precisely the type of career recidivist criminal at whom California's Three Strikes sentencing scheme is directed. It is also clear from this record that the trial court did in fact consider

Petitioner's request to strike, and his arguments in support thereof, as well as the probation officer's report. If the trial court considered these items, it was adequately and well-informed regarding Petitioner's background and record. Thus, Petitioner clearly received the "individualized consideration" California requires. See People v. Garcia, 20 Cal.4th 490, 500 (1999). Under all of these circumstances, Petitioner has failed to show the trial court's decision to be arbitrary or irrational or that the state court judgment was contrary to or an unreasonable application of clearly established federal law. Hence, Petitioner's claim must be denied.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1), be DENIED.

This Report and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty (20) days after being served with a copy of this Report and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Report and Recommendation." Replies to the Objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **February 12, 2007**              /s/ **Theresa A. Goldner**
**j6eb3d**                                  UNITED STATES MAGISTRATE JUDGE